# Exhibit B

**12-Person Jury**

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

FILED
7/18/2019 11:35 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019L007891    5819442

| | |
|---|---|
| ELZA WARTI, MULTI RIZKI, WESTHI RAMANDINA, MUNGNI RIFKI, MUHAMMAD NUR FUADI, M. NURAN TK. MUDO, <br><br>Plaintiffs, <br><br>v. <br><br>THE BOEING COMPANY, a corporation, <br><br>Defendant. | Case No. 2019L007891 <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT AT LAW

Plaintiffs ELZA WARTI; MULTI RIZKI; WESTHI RAMANDINA; MUNGNI RIFKI; MUHAMMAD NUR FUADI; M. Nuran Tk. Mudo, ("Plaintiffs") surviving heirs of Rijal Mahdi, deceased, allege as follows for their causes of action against Defendant THE BOEING COMPANY ("Boeing"), pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1, et seq.:

### THE PARTIES

1. At all times herein mentioned, the decedent Rijal Mahdi was an individual residing in Padang Sawah, Jorong Nan VII Kamang Hilia Village, Kamang Magek District, City of Agam, West Sumatra Province, Indonesia.

2. At all times herein mentioned, Plaintiffs were and are individuals residing in Padang Sawah, Jorong Nan VII Kamang Hilia Village, Kamang Magek District, City of Agam, West Sumatra Province, Indonesia. Plaintiffs are decedent's wife, four children, and father.

3. At all times herein mentioned, Defendant The Boeing Company was and is a corporation organized under the laws of Delaware with its worldwide headquarters and principal

place of business in Chicago, Illinois.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction over the entire action by virtue of the fact that this is a civil action wherein the matter in controversy, exclusive of interest and costs, exceeds the jurisdictional minimum of this Court. Additionally, this Court has specific jurisdiction over this action by virtue of the fact that Defendant Boeing's worldwide headquarters and principal place of business is in Chicago, Illinois.

5.  Venue is proper in this county pursuant to section 5/2-101 of the Illinois Code of Civil Procedure because Defendant Boeing resides in this county, is authorized to transact business in this county and is doing business in this county.

6.  To the extent applicable, Plaintiffs elect to pursue all maritime claims in this Court under the Savings-to-Suitors Clause, 28 U.S.C. § 1333(1).

## GENERAL ALLEGATIONS

7.  The 737 MAX 8 is the newest generation of Boeing's 737 series of aircraft.

8.  At all relevant times herein, Boeing manufactured the 737 MAX 8 model aircraft in the United States.

9.  In or around August 2018, Boeing delivered a newly manufactured 737 MAX 8 aircraft with tail number "PK-LQP" (the "subject aircraft") to Lion Air in Indonesia.

10. Prior to October 29, 2018 Defendant Boeing designed, manufactured, assembled and sold the subject aircraft and prepared, published, and provided to Lion Air information including, but not limited to, a 737 MAX 8 flight operations manual ("FOM") regarding the operation of the subject aircraft.

11. At the time the subject aircraft and its FOM left the custody and control of

2

Defendant Boeing, they were defective and unreasonably dangerous in one or more of the following respects, among other defects:

    a.    The subject aircraft's defective anti-stall system, the maneuvering characteristics augmentation system (MCAS), caused the aircraft's nose to suddenly, without warning, drop and dive steeply, and said event could occur even while under manual control when a pilot would not reasonably expect a flight computer to override one's actions.

    b.    The scenario described in (a) above was not covered in the defective FOM, and Defendant Boeing did not disclose the foregoing or how to recover the plane from the foregoing to Lion Air pilots when Lion Air purchased the subject aircraft;

    c.    The subject aircraft received "erroneous input" from one of its defective angle of attack ("AOA") sensors;

    d.    The scenario described in (c) above was not covered in the defective FOM, and Defendant Boeing did not disclose how to recover the plane from the foregoing to Lion Air pilots when Lion Air purchased the subject aircraft;

    e.    The subject aircraft and FOM lacked proper and adequate instructions and warnings regarding the design and functions of its MCAS system; and

    f.    The subject aircraft and FOM lacked proper and adequate instructions and warnings regarding how to correct a malfunctioning MCAS system.

12.    On or about October 29, 2018, Rijal Mahdi was a passenger on board the subject aircraft operated by Lion Air as Flight JT 610. The flight was scheduled to depart from Jakarta to Pangkal Pinang, a provincial capital of a small island in the Java Sea.

13.    On the morning of Monday, October 29, 2018, the subject aircraft departed from Jakarta's Soekarno – Hatta International Airport at or around 6:21 a.m. Shortly after takeoff, the

3

crew contacted air traffic controller and requested a return to Jakarta.

14. The subject aircraft received authorization to return, but it did not manage a turnaround. Witnesses saw the subject aircraft banking left, making significant altitude shifts, and then dropping sharply. According to data from flight radars, the plane was at an altitude of about 5,000 feet when its final descent began. The subject aircraft plummeted into the sea and disintegrated upon impact. The crew and passengers would have suffered unspeakable horror, pain, terror and injury as they plummeted to their deaths.

15. Since the crash, on November 7, 2018, the Federal Aviation Authority (FAA) sent an emergency directive to all MAX 8 operators which detailed that pilots can stop a malfunctioning MCAS on those planes by merely pressing two buttons. The bulletin further details: "This condition, if not addressed, could cause the flight crew to have difficulty controlling the airplane, and lead to excessive nose-down attitude, significant altitude loss, and possible impact with terrain."[1]

16. As a direct and proximate result of one or more of the above-described defective and dangerous conditions in the subject aircraft which caused it to crash into the sea as described above, Plaintiffs have suffered injuries in the form of unspeakable pain, suffering, loss of companionship, and loss of earnings and support, among other damages.

## COUNT I

**STRICT PRODUCTS LIABILITY**
**(Pursuant for the Illinois Wrongful Death Act, 740 ILCS 180/1, et seq.)**

17. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

---

[1] https://www/cnn.com/2018/11/18/americas/lion-air-boeing-safety-intl/index.html

4

18. At all times herein mentioned, Defendant Boeing did design, manufacture, assemble, inspect, repair, endorse, draft, test, franchise, market, promote, advertise, supply, lease, distribute, and place into the stream of commerce the subject aircraft and FOM.

19. At the time the subject aircraft and FOM left the hands of Defendant Boeing, the subject aircraft, FOM, and the components alleged above, were defective and unsafe in manufacture, design and warnings.

20. On or about October 29, 2018, Lion Air and its officers, directors, employees, and/or agents and decedent Rijal Mahdi were using the subject aircraft and FOM in a reasonable and foreseeable manner. Lion Air and its officers, directors, employees, and/or agents and decedent Rijal Mahdi were unaware that said products were unsafe for their intended use. The defective and unsafe conditions of aforesaid products caused the subject aircraft to plummet into an uncontrollable nosedive and crash into the sea. The decedent Rijal Mahdi was killed as a direct and legal result of the defective and unsafe conditions of said products and the component parts thereof.

21. Defendant Boeing knew or should have known of the defects in the design and manufacture of the aforesaid products, which constitutes a hazard for those coming into contact with the aforesaid products and the component parts, and Defendant Boeing failed to notify, warn, and protect those coming into contact with the aforesaid products of the MCAS system, and such failure to warn was one of the legal causes of the incident and death of Rijal Mahdi.

22. The aforesaid products failed to perform as safely as an ordinary consumer would have expected when the subject aircraft plummeted into an uncontrollable nose dive and crashed into the sea.

23. As a direct and legal result of the acts and omissions of Defendant Boeing,

5

Plaintiffs have been deprived of the love, care, society, comfort, assistant, protection, affection, companionship, guidance, solace, services and support of said decedent, and have thereby sustained, and will continue to sustain, pecuniary loss in a sum as yet unascertained.

## COUNT II

### NEGLIGENT PRODUCTS LIABILITY
(Pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1, et seq.)

24. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

25. At all times herein mentioned, Defendant Boeing so negligently, carelessly, recklessly, and with gross negligence, designed, manufactured, assembled, inspected, repaired, maintained, endorsed, drafted, tested, franchised, supplied, sold, leased, distributed, and placed into the stream of commercial the subject aircraft and FOM, and negligently failed to warn relative to the said products and the components alleged above, and otherwise so negligently conducted itself, so as to directly and legally cause the injuries and damages described herein to Plaintiffs.

26. At all times herein mentioned, Defendant Boeing knew, or in the exercise of reasonable care should have known, that the subject aircraft, the FOM and the components alleged above, were defectively and negligently manufactured, designed, assembled, tested, inspected, fabricated, constructed, distributed, marketed and sold. Defendant Boeing failed to take reasonable steps to avoid exposing consumers, including Plaintiffs' decedent, Rijal Mahdi, to the dangerous condition of such products, failed to disclose the products' known defects, failed to warn, failed to recall, failed to provide or send subsequent warnings after distribution to consumers, failed to warn Lion Air of the MCAS system, and otherwise so negligently conducted itself, so as to directly and legally cause the injuries and damages described herein to

6

Plaintiffs.

27. On or about October 29, 2018, Lion Air and its officers, directors, employees, and/or agents and decedent Rijal Mahdi were using the subject aircraft and FOM in a reasonable and foreseeable manner. Lion Air and its officers, directors, employees, and/or agents and decedent Rijal Mahdi were unaware that said products were unsafe for their intended use. The defective and unsafe conditions of the foregoing products caused the subject aircraft to fall into an uncontrollable nosedive and crash into the sea. The decedent Rijal Mahdi was killed as a result of the defective nature of the subject aircraft and FOM.

28. Defendant Boeing had a duty, as a designer and manufacturer of goods, to manufacture, design, inspect and test the subject aircraft and FOM to ensure they were safe for use by ordinary consumers.

29. From the time the subject aircraft and FOM were delivered to Lion Air to the time of the crash, the aforesaid products were only used for their intended purpose and were not modified, upgraded, altered, damaged, or substantially changed in any way.

30. As a direct and legal result of the acts and omissions of Defendant Boeing, Plaintiffs have been deprived of the love, care, society, comfort, assistance, protection, affection, companionship, guidance, solace, services and support of said decedent, and have thereby sustained, and will continue to sustain, pecuniary loss in a sum as yet unascertained.

## COUNT III

### PRE-DEATH FRIGHT &TERROR

31. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

32. The strict liability and negligence alleged in the previous causes of action were

7

additionally proximate causes of personal injuries to the decedent in the form of horrific pre-death fright & terror he experienced prior to impact with the sea.

33. Boeing is liable for said pre-death fright & terror that the decedent suffered because of its wrongful conduct.

## COUNT IV

## LOSS OF CONSORTIUM

34. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

35. The strict liability and negligence alleged in the previous causes of action were additionally proximate causes of loss of consortium experienced by all spouses and children of the decedent.

36. Boeing is liable for said loss of consortium each of the Plaintiffs have suffered as the result of its wrongful conduct.

## COUNT V

## WILLFUL AND WANTON MISCONDUCT

37. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

38. The evidence is clear and convincing that well before this accident Boeing was on actual notice that the subject airplane had a defectively designed flight control system. It is equally obvious that Boeing was aware of the dangers involved prior to this accident.

39. Despite their awareness of the potentially dangerous consequences, Boeing's officers and/or managing agents deliberately failed to either cure the defect in design or to provide sufficient warnings and/or instruction and training. Said conduct was despicable and

8

amounted to malice in the form of willful, wanton, and/or knowing disregard for safety of others.

40. Plaintiffs are entitled to recover not only compensatory damages, but also pursuant to applicable law, they are entitled to exemplary damages against Boeing.

## DAMAGES

41. As a proximate result of defendant Boeing's wrongful conduct, Plaintiffs have suffered all manner of both general and special damages.

42. Plaintiffs have suffered loss of love, comfort, care, companionship, guidance, society and all other forms of consortium. They have experienced grief, sorrow, and mental anguish to the extreme.

43. Just prior to the decedent's death, he experienced horrific fright and terror as the plane rocketed down to impact with the sea.

44. Plaintiffs have suffered loss of net accumulations in the decedent's estate, loss of support, and loss of services.

45. Said damages have been sustained in the past and will continue in the future.

46. The exact nature and the full extent of Plaintiffs' damages will be proven at trial.


**WHEREFORE**, Plaintiffs request that this Court grant judgment in its favor and against Defendant and award Plaintiffs the following relief:

(1) Award Plaintiffs all damages available under the law, including exemplary damages, in an amount to be determined at trial;

(2) Award Plaintiffs interest in an amount to be determined by the Court;

(3) Award Plaintiffs attorneys' fees and court costs in an amount to be determined by the Court; and

9

FILED DATE: 7/18/2019 11:35 AM 2019L007891

(4)     Grant such other relief as this Court deems appropriate and just.

                                                                Respectfully submitted,

                                                         **PLAINTIFFS ELZA WARTI, MULTI RIZKI, WESTHI RAMANDINA, MUNGNI RIFKI, AND MUHAMMAD NUR FUADI,**

Dated: July 18, 2019                      By: /s/ Ari J. Scharg
                                                         One of Plaintiffs' attorneys

Jay Edelson
jedelson@edelson.com
Benjamin H. Richman
brichman@edelson.com
Ari J. Scharg
ascharg@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
312.589.6370 (firm)
312.589.6378 (fax)

Rafey S. Balabanian
rbalabanian@edelson.com
EDELSON PC
123 Townsend, Suite 100
San Francisco, California 94107
415.212.9300 (firm)
415.373.9435 (fax)
Firm ID: 62075

Dated: July 18, 2019                      By: /s/ Thomas V. Girardi

Thomas V. Girardi (*pro hac vice* pending)
tgirardi@girardikeese.com
Keith D. Griffin (*pro hac vice* pending)
kgriffin@girardikeese.com
GIRARDI | KEESE
1126 Wilshire Boulevard
Los Angeles, California 90017
213.977.0211 (firm)
213.481.1554 (fax)

10